**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**

| | |
|---|---|
| **BRETT DECUIR,** Individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**CRM DEVELOPMENT COMPANY d/b/a CRM COMPANIES, and DROPPING BIRD 16, L.L.C.**<br><br>*Defendant.* | Civil Action No. 1:21-cv-40-GNS<br><br>**JURY TRIAL DEMANDED**<br><br>**COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**<br><br>**CLASS ACTION PURSUANT TO FED. R. CIV. P. 23** |

**ORIGINAL COLLECTIVE AND CLASS ACTION COMPLAINT**

Plaintiff—Brett DeCuir, individually and on behalf of all current and former non-exempt night shift employees who used the SabreTooth clock in system (collectively, "Plaintiff and the Putative Class Members") and who worked for CRM Development Company d/b/a CRM Companies ("CRM") and/or Dropping Bird 16, L.L.C., ("DB16") at any time during the relevant statutes of limitation through the final disposition of this matter—brings this action against Defendants to recover compensation, liquidated damages, and attorneys' fees and costs pursuant to Sections 206, 207, and 216(b) of the Fair Labor Standards Act of 1938, as amended, and under the Kentucky Wage and Hour Act ("KWHA"), KY. REV. STAT. ANN. §§ 337.010, *et seq.*

Plaintiff's FLSA claim is asserted as a collective action under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), and the Kentucky state law claim is asserted as a class action under Federal Rule of Civil Procedure 23. The following allegations are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to the acts of others.

# I.
# OVERVIEW

1.      This is a collective action to recover overtime wages and liquidated damages brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19, and a class action pursuant to the state laws of Kentucky under FED. R. CIV. P. 23, to recover unpaid straight-time wages, unpaid overtime wages, and other applicable penalties.

2.      Plaintiff and the Putative Class Members are those persons who worked for Defendants as non-exempt nightshift employees who used the SabreTooth clock in system at Defendants' restaurants, anywhere in the United States, at any time from March 8, 2018, through the final disposition of this matter, and have not been paid for all hours worked nor the correct amount of overtime in violation of state and federal law.

3.      Although Plaintiff and the Putative Class Members routinely worked in excess of forty (40) hours per workweek, Plaintiff and the Putative Class Members have not been paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

4.      During the relevant time period, Defendants knowingly and deliberately failed to compensate Plaintiff and the Putative Class Members for all hours worked each workweek and the proper amount of overtime on a routine and regular basis during the relevant time periods.

5.      Specifically, Defendants employed a time keeping system ("SabreTooth") that did not properly calculate and accurately maintain Plaintiff and the Putative Class Members' electronic time records.

6.      Defendants' regular practice—including during weeks when Plaintiff and the Putative Class Members worked in excess of 40 hours (not counting hours worked "off-the-clock")—was (and

is) to employ the SabreTooth time clock that automatically clocked out all employees—including Plaintiff and Putative Class Members— at 4:30 a.m. even though they regularly worked (and continue to work) "off-the-clock" past 4:30 a.m.

7. The effect of Defendants' illegal practices were (and are) that all time worked by Plaintiff and the Putative Class Members was not (and is not) counted and paid past 4:30 a.m.; thus, Defendants have failed to properly compensate Plaintiff and the Putative Class Members for all of their hours worked and, accordingly, failed to properly calculate Plaintiff and the Putative Class Members' overtime under the FLSA and Kentucky state law.

8. Plaintiff and the Putative Class Members did not (and currently do not) perform work that meets the definition of exempt work under the FLSA or Kentucky state law.

9. Plaintiff and the Putative Class Members seek to recover all unpaid overtime, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and to recover all unpaid straight-time, overtime, and other damages owed under the KWHA as a class action pursuant to Federal Rule of Civil Procedure 23.

10. Plaintiff also prays that all similarly situated workers (Putative Class Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

11. Plaintiff also prays that the Rule 23 class is certified as defined herein, and that Plaintiff DeCuir designated herein be named as the Class Representative for the Kentucky Class.

## II.
## THE PARTIES

12. Plaintiff Brett DeCuir ("DeCuir") resides in Bowling Green, Warren County, Kentucky and was employed by Defendants in Bowling Green, Kentucky during the relevant time

period. Plaintiff DeCuir did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[1]

13. The FLSA Collective Members are those current and former non-exempt night shift employees who used the SabreTooth clock in system and whom were employed by Defendants, anywhere in the United States, at any time from March 8, 2018 through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff DeCuir worked and was paid.

14. The Kentucky Class Members are those current and former non-exempt night shift employees who used the SabreTooth clock in system and whom were employed by Defendants, in Kentucky, at any time from March 8, 2016 through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff DeCuir worked and was paid.

15. Defendant CRM Development Company d/b/a CRM Companies is a Domestic For-Profit Corporation, licensed to and doing business in the State of Kentucky. CRM Companies may be served through its registered agent for service of process: **William Craig Turner, 145 Rose Street, Lexington, Kentucky 40507.**

16. Defendant Dropping Bird 16, L.L.C. is a Domestic Limited Liability Company, licensed to and doing business in the State of Kentucky. DB16 may be served through its registered agent for service of process: **William Craig Turner, 145 Rose Street, Lexington, Kentucky 40507.**

### III.
### JURISDICTION & VENUE

17. This Court has federal question jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. §§ 201–19.

18. This Court has supplemental jurisdiction over the Kentucky state law claims pursuant

---

[1] The written consent of Brett DeCuir is attached hereto as Exhibit "A."

to 28 U.S.C. § 1367.

19. This Court has personal jurisdiction over Defendants because the cause of action arose within this district as a result of Defendants' conduct within this District and Division.

20. Venue is proper in the Western District of Kentucky because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

21. Specifically, Plaintiff DeCuir worked in Bowling Green, Kentucky throughout his employment with Defendants, which is located within this District and Division.

22. Venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391(b).

23. Defendants are joint employers pursuant to 29 C.F.R. § 791.2. They have (or had) common ownership, oversight and control over Plaintiff and the Putative Class Members. As a result, both Defendants are responsible, both individually and jointly, for compliance with all of the applicable provisions of the FLSA, including the overtime provisions, with respect to the entire employment for the workweeks at issue in this case.

## IV.
## ADDITIONAL FACTS

24. Defendant CRM is involved in facilities management, hotel, restaurant, and construction management.[2] CRM currently owns and operates 17 Raising Cane's locations in Kentucky and South Carolina.[3]

25. Defendant DB16 assists Defendant CRM in operating its Raising Cane's location in Bowling Green Kentucky.

26. Through unified operation and common control, Defendants CRM and DB16 qualify as joint employers under 29 C.F.R. § 791.2.

---

[2] https://www.crmco.com/

[3] https://www.crmco.com/portfolio?lightbox=dataItem-ih2t6whf1

27. Defendants had and have common ownership, oversight, and control over Plaintiff and the Putative Class Members—whose work benefitted each of these Defendants.

28. Defendants dictated their employees' compensation schemes (including those of Plaintiff and the Putative Class Members), made their employees' work schedules, recorded their employees' hours, maintained their employees' employment files, maintained their employees' documents, possessed the ability to hire and fire their employees, and managed and controlled the work done by their employees.

29. As a result, Defendants are responsible, both individually and jointly, for compliance with the FLSA, including its overtime provisions, with respect to the entire employment for the workweeks at issue in this case.

30. Defendants are joint employers pursuant to 29 C.F.R. § 791.2.

31. Defendants directly or indirectly hired Plaintiff and the Putative Class Members, controlled their work schedules and conditions of employment, and determined the rate and method of the payment of wages.

32. Specifically, Plaintiff DeCuir was hired by DB16 but was paid by Defendant CRM.

33. Defendant CRM managed Plaintiff DeCuir's health insurance and other employment related benefits.

34. Defendants maintained control, oversight, and direction over Plaintiff DeCuir, including the promulgation and enforcement of policies affecting the payment of wages for overtime compensation.

35. Defendants mutually benefitted from the work performed by Plaintiff and the Putative Class Members.

36. Defendants did not act entirely independently of each other and have not been completely disassociated with respect to the work of Plaintiff and the Putative Class Members.

37. Defendants shared the services of Plaintiff and the Putative Class Members. Defendants acted directly or indirectly in the interest of each other in relation to Plaintiff and the Putative Class Members.

38. Specifically, Defendants dictated the practical goals and what pressing or tactical items needed to be done in order to meet the goals of the respective Defendants and/or their customers.

39. Moreover, Defendants have the power to hire and fire the Plaintiff and the Putative Class Members, supervise and control the Plaintiff and Putative Class Members' work schedules and conditions of their employment, determine their rate and method of payment, and maintain their employment records.

40. Plaintiff DeCuir was employed by Defendants in Bowling Green, Kentucky from approximately December of 2019 until November of 2020. [4]

41. Plaintiff and Putative Class Members are (or were) non-exempt night shift employees who used the SabreTooth clock in system.

42. Importantly, none of the FLSA exemptions relieving a covered employer (such as Defendants) of the statutory duty to pay its employees overtime at one and one-half times the regular rate of pay apply to Plaintiff or the Putative Class Members.

43. As night shift employees, Plaintiff and Putative Class Members job duties consisted (or consist) of handling crewmember and customer situations, monitoring cleanliness and maintenance of the restaurant, and cleaning the restaurant.

44. Plaintiff and the Putative Class Members typically worked approximately forty (40) "on-the-clock" hours per week.

---

[4] https://www.wbko.com/content/news/Raising-Canes-to-celebrate-grand-opening-568016821.html

45. In addition to their forty (40) "on-the-clock" hours, Plaintiff and the Putative Class Members worked up to three (3) to five (5) hours "off-the-clock" per week and have not been compensated for that time.

### The SabreTooth Time Keeping System

46. Defendants utilize the SabreTooth time keeping system, which was (and remains) programmed to shut down daily at 4:30 a.m.

47. When the SabreTooth time keeping system shuts down at 4:30 a.m., it automatically clocks out all workers, regardless of whether they are currently working or not.

48. Although Defendants knew their time keeping system automatically clocks employees out at 4:30 a.m., Defendants still scheduled Plaintiff and the Putative Class Members to work past 4:30 a.m.

49. Defendants did not inform Plaintiff or the Putative Class Members that they would be automatically clocked out by the SabreTooth system at 4:30 a.m.

50. Plaintiff and the Putative Class Members were (and continue to be) regularly scheduled to work from 3 p.m. to either 7 a.m. or 9 a.m. the next morning. Due to the system automatically clocking Plaintiff and the Putative Class Members out at 4:30 a.m., Plaintiff and the Putative Class Members were (and currently are) not compensated for all of their hours worked.

51. Defendants were aware of this issue because Plaintiff DeCuir discussed SabreTooth's automatic clock-out routine with the general manager after discovering his shorted hours. In response to Plaintiff DeCuir's concerns, the general manager informed Plaintiff DeCuir that he knew of this feature and further that SabreTooth was not designed for employees to be on the clock all night.

52. Defendants' automatic clock out mechanism miscalculated Plaintiff and the Putative Class Members actual hours worked at or below forty (40) hours per workweek and actual hours worked in excess of 40 hours per workweek and deprived (and continues to deprive) Plaintiff and the

Putative Class Members of the required and proper amount of straight time pay and overtime pay in violation of the FLSA and the KWHA.

53. As a result of Defendants' corporate policies and practices requiring Plaintiff and the Putative Class Members to perform work past 4:30 a.m., Plaintiff and the Putative Class Members were not (and continue to not be) compensated for all hours worked, including all hours worked in excess of forty (40) in a workweek, at the rates required by the FLSA.

54. Defendants employed (and continue to employ), other individuals who perform(ed) the same or similar job duties under the same pay provisions as Plaintiff.

55. Defendants were (and continue to be) aware of their obligation to pay for all hours worked and pay overtime for all hours worked in excess of forty (40) each week to Plaintiff and the Putative Class Members, but Defendants failed to do so.

56. Because Defendants have not paid Plaintiff and the Putative Class Members for all hours worked and time and a half for all hours worked in excess of forty (40) in a workweek, Defendants' pay policies and practices violated the FLSA and KWHA.

57. Because Defendants did not pay Plaintiff and the Putative Class Members for each straight-time hour worked, Defendants' pay policies and practices also violate the KWHA

## V.
## CAUSES OF ACTION

### COUNT ONE
**(Collective Action Alleging FLSA Violations)**

**A.     FLSA COVERAGE**

58. All previous paragraphs are incorporated as though fully set forth herein.

59. The FLSA Collective is defined as:

**ALL NIGHT SHIFT EMPLOYEES WHO UTILIZED THE SABRETOOTH CLOCK IN SYSTEM AND WHO WORKED FOR CRM DEVELOPMENT COMPANY D/B/A CRM COMPANIES AND/OR DROPPING BIRD 16, L.L.C., ANYWHERE IN THE UNITED STATES, AT**

**ANY TIME FROM MARCH 8, 2018 THROUGH THE FINAL DISPOSITION OF THIS MATTER ("FLSA Collective" or "FLSA Collective Members").**

60. At all times hereinafter mentioned, Defendants were employers within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

61. At all times hereinafter mentioned, Defendants have been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

62. At all times hereinafter mentioned, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that that enterprise has had, and has, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

63. Specifically, Defendants operate numerous restaurants, purchase materials through commerce, transport materials through commerce and on the interstate highways, and conduct transactions through commerce, including the use of credit cards, phones and/or cell phones, and the Internet.

64. During the respective periods of Plaintiff and the FLSA Collective Members' employment by Defendants, these individuals provided services for Defendants that involved interstate commerce for purposes of the FLSA.

65. In performing the operations hereinabove described, Plaintiff and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce within the meaning

of §§ 203(b), 203(i), 203(j), 206(a), and 207(a) of the FLSA. 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

66. Specifically, Plaintiff and the FLSA Collective Members are (or were) non-exempt night shift managers who assisted Defendants' customers. 29 U.S.C. § 203(j).

67. At all times hereinafter mentioned, Plaintiff and the FLSA Collective Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206–07.

68. The proposed class of similarly situated employees sought to be certified pursuant to 29 U.S.C. § 216(b), is defined in Paragraph 59.

69. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee and personnel records of Defendants.

**B. FAILURE TO PAY WAGES AND OVERTIME UNDER THE FAIR LABOR STANDARDS ACT**

70. Defendants violated provisions of Sections 6, 7 and 15 of the FLSA, 29 U.S.C. §§ 206, 207, and 215(a)(2) by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such non-exempt employees for all the hours they worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates for which they were employed.

71. Moreover, Defendants knowingly, willfully, and with reckless disregard carried out their illegal pattern of failing to pay Plaintiff and other similarly situated employees the proper amount of overtime compensation for all hours worked over forty (40) each week. 29 U.S.C. § 255(a).

72. Defendants knew or should have known their pay practices were in violation of the FLSA.

73. Defendants are sophisticated parties and employers, and therefore knew (or should have known) their pay policies violated of the FLSA.

74. Plaintiff and the FLSA Collective Members, on the other hand, are (and were) unsophisticated laborers who trusted Defendants to pay them according to the law.

75. The decision and practice by Defendants not to pay Plaintiff and the FLSA Collective Members overtime for all hours worked over forty (40) each week was neither reasonable nor in good faith.

76. Accordingly, Plaintiff and the FLSA Collective Members are entitled to be paid overtime wages for all hours worked in excess of forty (40) hours per workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

**C.    COLLECTIVE ACTION ALLEGATIONS**

77. All previous paragraphs are incorporated as though fully set forth herein.

78. Pursuant to 29 U.S.C. § 216(b), this is a collective action filed on behalf of Defendants' employees who are (or were) similarly situated to Plaintiff with regard to the work they performed and the manner in which they were paid.

79. Other similarly situated employees of Defendants have been victimized by Defendants' patterns, practices, and policies, which are in willful violation of the FLSA.

80. The FLSA Collective Members are defined in Paragraph 59.

81. Defendants' failure to pay Plaintiff and the FLSA Collective Members overtime compensation at the rates required by the FLSA, results from generally applicable policies and practices of Defendants, and does not depend on the personal circumstances of Plaintiff or the FLSA Collective Members.

82. Thus, Plaintiff's experiences are typical of the experiences of the FLSA Collective Members.

83. The specific job titles or precise job requirements of the various FLSA Collective Members does not prevent collective treatment.

84. All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated their overtime wages for all hours worked in excess of forty (40) each week.

85. Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

86. Absent a collective action, many members of the proposed FLSA collective will not likely obtain redress of their injuries and Defendants will retain the proceeds of their violations.

87. Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

88. Accordingly, the FLSA collective of similarly situated plaintiffs should be certified as defined as in Paragraph 59, and notice should be promptly sent.

### COUNT TWO
### (Class Action Alleging Violations of the KWHA)

**A.     KWHA COVERAGE**

89. Paragraphs 1-88 are incorporated as though fully set forth herein.

90. The Kentucky Class is defined as:

**ALL NIGHT SHIFT EMPLOYEES WHO UTILIZED THE SABRETOOTH CLOCK IN SYSTEM AND WHO WORKED FOR CRM DEVELOPMENT COMPANY D/B/A CRM COMPANIES AND/OR DROPPING BIRD 16, L.L.C., ANYWHERE IN THE STATE OF KENTUCKY, AT ANY TIME FROM MARCH 8, 2018 THROUGH THE FINAL DISPOSITION OF THIS MATTER ("Kentucky Class" or "Kentucky Class Members").**

91. At all times hereinafter mentioned, Defendants have been "employers" within the meaning of the KWHA. KY. REV. STAT. ANN. §§ 337.010, *et seq.*; 803 KY. ADMIN. REGS. 1:005.

92. At all times hereinafter mentioned, Plaintiff and the Kentucky Class members have been "employees" within the meaning of the KWHA. KY. REV. STAT. ANN. §§ 337.010, *et seq.*; 803 KY. ADMIN. REGS. 1:005.

### B. FAILURE TO PAY WAGES IN ACCORDANCE WITH THE KENTUCKY STATUTES

93. All previous paragraphs are incorporated as though fully set forth herein.

94. The KWHA requires that "[e]very employer doing business in [Kentucky] shall . . . pay to each of its employees all wages or salary earned to a day not more than eighteen (18) days prior to the date of that payment." KY. REV. STAT. ANN. § 337.020.

95. Defendants have willfully failed to pay Plaintiff DeCuir and the Kentucky Class Members for all hours they worked. When this "off-the-clock" time is included as time worked, Defendants have failed to pay Plaintiff DeCuir and the Kentucky Class Members correct wages and overtime wages as required by the KWHA.

96. Plaintiff DeCuir and the Kentucky Class Members have suffered damages and continue to suffer damages as a result of Defendants' acts or omissions as described herein. Defendants are in possession and control of necessary documents and information from which Plaintiff DeCuir would be able to precisely calculate damages.

97. Plaintiff DeCuir, on behalf of himself and the Kentucky Class Members, seeks recovery of their unpaid wages and an additional equal amount as liquidated damages, attorneys' fees, costs, and reasonable expenses of this action to be paid by Defendants. *See* KY. REV. STAT. ANN. § 337.385.

98. The proposed class of employees, i.e. putative class members sought to be certified pursuant to the Kentucky Wage and Hour Act, is defined in Paragraph 90.

99. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Defendants.

C. **KENTUCKY CLASS ALLEGATIONS**

100. All previous paragraphs are incorporated as though fully set forth herein.

101. Plaintiff DeCuir brings his Kentucky claim as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by Defendants who worked in Kentucky at any time since March 8, 2016.

102. Class action treatment of Plaintiff DeCuir's Kentucky claim is appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

103. The number of Kentucky Class Members is so numerous that joinder of all class members is impracticable.

104. Plaintiff DeCuir is a member of the Kentucky Class, his claims are typical of the claims of other Kentucky Class Members, and he has no interests that are antagonistic to or in conflict with the interests of other Kentucky Class Members.

105. Plaintiff DeCuir and his counsel will fairly and adequately represent the Kentucky Class Members and their interests.

106. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

107. Accordingly, the Kentucky Class should be certified as defined in Paragraph 90.

## VI.
## RELIEF SOUGHT

108. Plaintiff DeCuir respectfully prays for judgment against Defendants as follows:

    a. For an Order certifying the FLSA Collective as defined in Paragraph 59 and requiring Defendants to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all putative collective action members;

    b. For an Order approving the form and content of a notice to be sent to the FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

    c. For an Order pursuant to Section 16(b) of the FLSA finding Defendants liable for unpaid back wages due to Plaintiff (and those FLSA Collective Members who have joined in the suit), and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff (and those FLSA Collective Members who have joined in the suit);

    d. For an Order certifying the Kentucky Class as defined in Paragraph 90 and designating Plaintiff DeCuir as the Class Representative of the Kentucky Class.

    e. For an Order pursuant to the KWHA awarding the Kentucky Class Members all damages allowed by law;

    f. For an Order awarding the costs of this action;

    g. For an Order awarding attorneys' fees;

    h. For an Order awarding pre-judgment and post-judgment interest at the maximum legal rate;

    i. For an Order awarding Plaintiff DeCuir a service award as permitted by law;

    j. For an Order compelling the accounting of the books and records of Defendants, at Defendants' expense; and

      k.      For an Order granting such other and further relief as may be necessary and appropriate.

Date: March 10, 2021        Respectfully submitted,

**The Lawrence Firm, PSC**

By: /s/ *Anne L. Gilday*
Anne L. Gilday (KY Bar ID: 90126)
606 Philadelphia Street
Covington, KY 41011
Telephone: 859-578-9130
Fax: 859-578-1032
anne.gilday@lawrencefirm.com

*Local Counsel*

By: /s/ *Clif Alexander*
**Clif Alexander** (application *pro hac vice* forthcoming)
Texas Bar No. 24064805
clif@a2xlaw.com
**Austin W. Anderson** (application *pro hac vice* forthcoming)
Texas Bar No. 24045189
austin@a2xlaw.com
**Carter T. Hastings** (application *pro hac vice* forthcoming*)*
Texas Bar No. 24101879
carter@a2xlaw.com
**ANDERSON ALEXANDER, PLLC**
819 N. Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

*Attorneys in Charge for Plaintiff and Putative Class Members*